UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JANE DOE, individually and on behalf of her minor child, SARAH DOE,

Plaintiffs,

-against-

OCEANSIDE UNION FREE SCHOOL DISTRICT, DR. PHYLLIS S. HARRINGTON, in her official capacity as Superintendent of Schools, and DR. ANTHONY DONATELLI, in his official capacity as School District Physician,

Defendants.

Docket No. 25-cv-02304 (GRB)(ST)

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SOKOLOFF STERN LLP
*Attorneys for Defendants*
*Oceanside Union Free School District*
*and Dr. Phyllis S. Harrington*
179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500
File No. 250122LI

*of Counsel:*
    Chelsea Weisbord
    Danielle Jacobs

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. 2

TABLE OF AUTHORITIES ............................................................................................. I

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 7

ARGUMENT ................................................................................................................... 8

    I. Plaintiff's Delay in Seeking an Injunction Demonstrates the Lack of
      Irreparable Harm ……………………………………………………………………8

    II. The Court Should Deny the Requested Relief Because Plaintiff Fails to Meet the
      High Standard for a Preliminary Injunction                9

    A. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The Merits
      of Her Federal Claims Under the Americans With Disabilities Act or
      Rehabilitation Act ................................................................................................. 12

    B. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The
      Merits of Her Federal Substantive Due Process Claim .................................... 16

    C. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The
      Merits of Her State Law Claims ....................................................................... 19

    D. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The
      Merits of Her Official Capacity Claims Against Dr. Phyllis Harrington........................ 17

    E. Plaintiff Cannot Show She Will Suffer Any Irreparable Harm, Much Less
      "Extreme or Very Serious Damage" Required for a Mandatory Injunction................... 18

    F. The Balance of Hardships Does Not Tip Decisively in Plaintiff's Favor ................. 19

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*A.A.C. on behalf of G.C. v. Starpoint Cent. Sch. Dist.*,
  2025 WL 1201971 (W.D.N.Y. Apr. 25, 2025)............................................................ 12, 17

*A.M. ex rel. J.M. v. NYC Dep't of Educ.*,
  840 F. Supp. 2d 660 (E.D.N.Y. 2012) ......................................................................... 18

*Aiola v. Malverne Union Free Sch. Dist.*,
  2017 WL 3917018 (E.D.N.Y. Sept. 5, 2017) ............................................................... 17

*Alleyne v. New York State Educ. Dep't*,
  691 F. Supp. 2d 322 (N.D.N.Y. 2010)......................................................................... 15

*Ameur v. Gates*,
  759 F.3d 317 (4th Cir. 2014) ....................................................................................... 16

*Ass'n of Jewish Camp Operators v. Cuomo*,
  470 F. Supp. 3d 197 (N.D.N.Y. 2020)......................................................................... 19

*Cacchillo v. Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011) .......................................................................................... 7

*Caviezel v. Great Neck Pub. Sch.*,
  500 F. App'x 16 (2d Cir. 2012) ................................................................................... 14

*Caviezel v. Great Neck Pub. Sch.*,
  701 F. Supp. 2d 414 (E.D.N.Y. 2010) ......................................................................... 16

*Cnty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..................................................................................................... 14

*D.A.B. v. N.Y.C. Dept. of Educ.*,
  45 F.Supp.3d 400 (S.D.N.Y. 2014) ............................................................................ 11

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ........................................................................................ 10

*DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co.*,
  2020 WL 2797244 (E.D.N.Y. May 29, 2020).............................................................. 18

*Doe v. Rensselaer Polytechnic Inst.*,
  2019 WL 13472598 (N.D.N.Y. Aug. 21, 2019) ........................................................... 19

*Doe v. Zucker*,
   520 F. Supp. 3d 217 (N.D.N.Y. 2021)..................................................................... 15, 19

*Donohue v. Mangano*,
   886 F. Supp. 2d 126 (E.D.N.Y. 2012) ........................................................................ 18

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ......................................................................................... 18

*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*,
   2015 WL 4162757 (E.D.N.Y. July 8, 2015)................................................................. 9

*Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*,
   25 F.3d 119 (2d Cir. 1994) ............................................................................................ 9

*Freedom Holdings, Inc. v. Cuomo*,
   624 F.3d 38 (2d Cir. 2010) ........................................................................................... 16

*Garland v. New York City Fire Dep't*,
   574 F. Supp. 3d 120 (E.D.N.Y. 2021) ........................................................................... 8

*Goe v. Zucker*,
   43 F.4th 19 (2d Cir. 2022) ....................................................................................*Passim*

*Heller v. Doe*,
   509 U.S. 312 (1993) ....................................................................................................... 16

*Immediato v. Rye Neck Sch. Dist.*,
   73 F.3d 454 (2d Cir. 1996) ........................................................................................... 15

*Jacobson v. Commonwealth of Massachusetts*,
   197 U.S. 11 (1905) ......................................................................................................... 14

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
   2012 WL 1521060 (S.D.N.Y. Apr. 30, 2012) ............................................................... 9

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595, 133 S. Ct. 2586 (2013) .......................................................................... 15

*Leebaert v. Harrington*,
   332 F.3d 134 (2d Cir. 2003) ......................................................................................... 15

*Madej v. Yale Univ.*,
   2020 WL 1614230 (D. Conn. Mar. 31, 2020) ............................................................. 19

*Mastrovincenzo v. City of N.Y.*,
   435 F.3d 78 (2d Cir. 2006) ........................................................................................... 7

*Metropcs New York, LLC v. Riverhead Water Dist.*,
   2016 WL 373969 (E.D.N.Y. Jan. 29, 2016) .................................................................. 9

*Missick v. City of New York*,
   707 F. Supp. 2d 336 (E.D.N.Y. 2010) ....................................................................... 10

*Monserrate v. N.Y. State Senate*,
   599 F.3d 148 (2d Cir. 2010) ......................................................................................... 7

*Monserrate v. N.Y. State Senate*,
   695 F. Supp. 2d 80 (S.D.N.Y. 2010) ........................................................................... 7

*Morales v. City of New York*,
   752 F.3d 234 (2d Cir. 2014) ....................................................................................... 14

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
   883 F.3d 32 (2d Cir. 2018) ......................................................................................... 10

*Nadel v. Shinseki*,
   57 F. Supp. 3d 288 (S.D.N.Y. 2014) ......................................................................... 11

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015) ....................................................................................... 10

*Pena v. DePrisco*,
   432 F.3d 98 (2d Cir. 2005) ......................................................................................... 14

*Perros v. County of Nassau*,
   238 F.Supp.3d 395 (E.D.N.Y. 2017) .......................................................................... 18

*Phillips v. City of New York*,
   775 F.3d 538 (2d Cir. 2015) ....................................................................................... 14

*Prince v. Massachusetts*,
   321 U.S. 158 (1944) .................................................................................................... 15

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ...................................................................................................... 8

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ......................................................................................... 19

*Sandler v. Benden*,
  2016 WL 9944017 (E.D.N.Y. Aug. 19, 2016) ...................................................... 11

*Sedor v. Frank*,
  42 F.3d 741 (2d Cir.1994) ...................................................... 11

*Shenzhen Miracle Laptop Bags Co. v. Castillo*,
  2023 WL 1070464 (E.D.N.Y. Jan. 27, 2023) ...................................................... 7

*Silber v. Barbara's Bakery, Inc.*,
  950 F. Supp. 2d 432 (E.D.N.Y. 2013) ...................................................... 8

*Snowden v. Trustees of Columbia Univ.*,
  2014 WL 1274514 (S.D.N.Y. Mar. 26, 2014) ...................................................... 10

*Soundview Associates v. Town of Riverhead*,
  725 F.Supp.2d 320 (E.D.N.Y. 2010) ...................................................... 14

*Tough Traveler, ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir.1995) ...................................................... 9

*Two Kids From Queens, Inc. v. J & S Kidswear, Inc.*,
  2009 WL 5214497 (E.D.N.Y. Dec. 30, 2009) ...................................................... 9

*United States v. Kelly*,
  2020 WL 2746001 (E.D.N.Y. May 22, 2020) ...................................................... 16

*V.D. v. State*,
  403 F.Supp.3d 76 (E.D.N.Y. 2019) ...................................................... 2, 8, 19

*Watkins-El v. Dep't of Educ.*,
  2016 WL 5867048, (E.D.N.Y. Oct. 7, 2016) ...................................................... 16

*Weisshaus v. Cuomo*,
  512 F. Supp. 3d 379 (E.D.N.Y. 2021) ...................................................... 18, 19

*Workman v. Mingo Cty. Bd. of Educ.*,
  419 F. App'x 348 (4th Cir. 2011) ...................................................... 15

*Wren v. Midwestern State University*,
  2019 WL 3099408 (N.D. Texas 2019) ...................................................... 11

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ...................................................... 7

iv

*Z.F.X. by Vankesteren v. Riverhead Cent. Sch. Dist.*, No. CV 20-962 (GRB)(ST, 2021 WL 1238842 (E.D.N.Y. Apr. 2, 2021) ........................................................... 17

**Statutes**

29 U.S.C. § 794 ................................................................................................... 11

N.Y. Educ. Law § 310 ................................................................................... 16, 17

Public Health Law 2164 ............................................................................*Passim*

**Regulations**

10 NYCRR 66-1 *et al.* ............................................................................*Passim*

## PRELIMINARY STATEMENT

Defendants Oceanside Union Free School District and Dr. Phyllis Harrington submit this memorandum of law in opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction motion.

## STATEMENT OF FACTS

**A. New York State Has Mandatory Vaccination Laws That Require Students to Be Vaccinated Against Various Contagious Diseases to Attend School**

For more than a century, New York has required mandatory immunization for children to attend school. *See Goe v. Zucker*, 43 F.4th 19, 25 (2d Cir. 2022). Today, all children between the ages of two months and eighteen years must be immunized against several diseases to be admitted to school. *See* PHL § 2164 (7)(a). 10 NYCRR § 66-1.3 provides detailed requirements for proof of vaccination for admission to school.

Under 10 NYCRR 66-1.3, students must meet certain requirements to obtain a medical exemption to the mandatory vaccination laws. Students seeking a medical exemption must submit a medical form signed by a N.Y. licensed physician. *Id.*; *see also* Ex. C. The requisite medical exemption form must: (1) certify that immunization may be detrimental to the child's health; (2) contain sufficient information to identify a medical contraindication to a specific immunization; and (3) specify the length of time the immunization is medically contraindicated. *See* 10 NYCRR 66-1.3 (c). The medical exemption "must be reissued annually."[1] *Id.* And the school may require additional information supporting the exemption. *Id.*

NYCRR 66-1.1(l) requires a physician to find "that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standards of care." *See* 10 NYCRR 66-1.1(l). (Ex. A.) The ACIP

---

[1] Plaintiff seeks an exemption through graduation, but this is prohibited by the DOH which requires annual exemption requests.

includes tables of contraindications and precautions to common vaccines, (Ex. A, pp. 53-59), and conditions often incorrectly perceived as contraindications or precautions, (*Id.*, pp. 60-61).

The DOH's regulatory guidance incorporates the CDC's schedules and guidelines for medical exemptions. (Ex. B.) The DOH issued a set of procedures for districts to utilize when reviewing requests for medical exemptions. (Exs. C-D.) First, parent/guardian must submit a medical exemption from a NYS licensed physician. (*Id.*) Next, the principal or other designee reviews the submission for compliance with the New York Public Health Law ("PHL"). The school may request additional documentation. "In making a determination on a medical exemption request, the school should seek the appropriate medical consultation (e.g., the school's medical director.)" (*Id.* at p. 1, ¶3.) If needed, the school may (but need not) forward the request to the DOH's Bureau of Immunization for a recommendation. (*Id.*)

Outside of securing a valid exemption, all students must comply with the State's mandatory vaccination laws to attend school or be admitted to school. *See* PHL § 2164(8); 10 NYCRR §§ 66-1.3(c). If a student is not exempt from a mandatory vaccine, and that student refuses to obtain it, the school has no choice but to exclude that student within 14 days; a school cannot extend the grade period beyond 30 days. *See* PHL § 2164(7)(a), 8(a). 10 NYCRR § 66-1.4. Allowing an unvaccinated child to attend school would subject a district to severe penalties. PHL § 12-B (2) sets the civil penalty for willful violations at $2,000 per violation. Because unvaccinated and non-exempted children are ineligible to attend public or private schools, parents must provide homeschooling. *See V.D. v. State*, 403 F.Supp.3d 76, 89 (E.D.N.Y. 2019).

**B. The District's Review of Sarah Doe's Medical Exemption Requests**

The District's procedures track those set forth by the DOH discussed above. (Ex. F.) When reviewing Plaintiff's medical exemption requests, School personnel followed the procedure for

2

reviewing student request for medical exemption, which is set forth in the Declarations of Brandon Mitchell and Mary Conlon. (Mitchell Aff., ¶4; Conlon Aff., ¶5.)

Sarah Doe ("Sarah") first enrolled as a new student in the District for the 2024-2025 school year as a 10th grade student at Oceanside High School ("High School"). (Conlon Aff., ¶10.) While reviewing Sarah's immunization records on the second day of school (September 4), Mary Conlon (a High School nurse) noticed she was missing one mandatory vaccine; a third (and final) dose of the Hepatitis B vaccine. (*Id.*, ¶¶1, 13-14.) Conlon told Plaintiff who said she would provide titers results showing immunity. (*Id.*, ¶15.) Conlon received the titers results on September 16, but they were insufficient. (*Id.*, ¶16; Ex G.) Conlon called Plaintiff on September 18 and explained she would need proof of immunization or a medical exemption form. (*Id.*, ¶¶17, 19; Ex. H.)

On September 25, 2024, Plaintiff submitted a medical exemption form signed by Dr. Johnathan Field. (Conlon Aff., ¶21; Ex. I.) Conlon sent it to Dr. Antwan Haskoor for review. (Conlon Aff., ¶22.) Dr. Haskoor recommended the request be denied because it failed to meet the criteria for an exemption. (*Id.*, ¶23; Ex. J, p. 2.) Conlon emailed Plaintiff on September 26 and advised her of the District's denial of the request. (Conlon Aff., ¶24; Ex. K.)  On October 8, 2024, Dr. Mitchell sent Plaintiff a certified letter by mail formally denying the medical exemption request, advising Plaintiff Sarah would be excluded from school effective October 9, and advising Plaintiff of her appellate rights.  (Mitchell Aff., ¶12; Ex. M.)

Dr. Mitchell extended Sarah's October 10, 2024 exclusion date to October 24 after Plaintiff submitted a doctor's note from Sarah's pediatrician indicating she was scheduled to get vaccinated on October 28. (Mitchell, ¶¶14-15; Ex. N-2.) On October 24, 2024, Plaintiff emailed Dr. Mitchell a second medical exemption request, this time from Victoria Vamos FNP-BC, a nurse practitioner from a medical spa in Holbrook, New York. (*Id.*, ¶16; Ex. O.) The form Vamos submitted was

voided from the start as she is not a New York licensed physician. In fact, just above her signature, the State-created medical exemption form reads: "A New York State licensed physician must complete this medical statement." (Ex. O.) The District still initiated a review of the request, but was unable to complete it because Vamos could not be reached. (Conlon Aff., ¶¶28-29; Ex. O.)

Dr. Mitchell advised Plaintiff on October 25, that unfortunately, Sarah would have to be excluded as of October 28, 2024; he reminded her of her appellate rights. (Ex. O, p. 4.) Dr. Mitchell explained Sarah "was passed the deadline for the remaining vaccination and not within a window to receive it," and therefore, he was "required by state law to exclude her from school." (*Id.*)

On Monday October 28, 2024, Conlon sent Plaintiff's second medical exemption form (signed by Vamos) to Dr. Haskoor for review. (Conlon Aff., ¶¶29-30; Ex. P.) Conlon also explained the District "do[es] not have any documentation at all on this student that she has any of the diagnoses being listed." (Ex. P.) The District did not issue a formal denial letter because it was unable to complete a review of the request without being able to reach Vamos. (Conlon Aff., ¶30.) On October 29, Dr. Mitchell emailed Plaintiff that Sarah could not return to school until she either has the vaccination or he receives different information from the School Physician. (Mitchell Aff., ¶18; Ex. Q.) a review of the request without being able to reach Vamos. (Conlon Aff., ¶30.)

On October 29, Plaintiff submitted a letter signed by Dr. Robin Mackoff, from CityMD. (Pl. Ex. 8.) This letter did not comply with state law as Dr. Mackoff did not provide the required *Request for Medical Exemption to Immunization Form*. (Exs. D-E.)

On October 30, 2024, Assistant Superintendent Jill DeRosa advised Plaintiff, via email, that Sarah was unable to attend school that day because the School Physician must review doctor's notes. (Mitchell Aff., ¶ 19; Ex. R, p. 3.) Dr. DeRosa and Dr. Mitchell sent Plaintiff additional emails explaining they were trying to get Sarah back into school but were required to follow the

guidance of the School Physician and the Department of Health. (Mitchell Aff., ¶20; Exs. S-T.)
The next day, Dr. Mitchell provided Plaintiff with an update. (Mitchell Aff., ¶22; Ex. U.) Dr.
Harrington (Superintendent) also chimed in, explaining the District was eager to have Sarah return
to school but was bound by the DOH guidelines and Dr. Haskoor's directives. (*Id.*)

On November 4, 2024, Plaintiff submitted a medical exemption form signed by Dr.
Michael Richheimer. (Mitchell Aff., ¶24.) Dr. Richheimer identified "demoatographia/hives" as
the only contraindication or precaution, and he said Sarah required an exemption until February 4,
2025. (Pl. Ex. 4.) Conlon forwarded Plaintiff's November 4 medical exemption request to Dr.
Haskoor for review. (Conlon Aff., ¶32; Mitchell Aff., ¶24.) He granted a temporary exemption
until February 4, 2025. (*Id.*) Dr. Mitchell conveyed the School Physician's decision to Plaintiff,
and Sarah returned to school on November 5. (Mitchell Aff., ¶25.)

On January 30, 2025, Plaintiff submitted another medical exemption request from Dr.
Field, dated January 25. (*Id.*, ¶35; Pl. Ex. 3.)  Dr. Field identified "demoatographia/hives" as the
only contraindication, and Sarah required an exemption until May 4. (Pl. Ex. 3.) Conlon sent this
exemption form to Epstein to forward to Dr. Haskoor for review; Plaintiff also provided a signed
HIPAA release form allowing Dr. Haskoor to speak directly with Dr. Field. (Conlon Aff., ¶35; Ex.
W.) Later that afternoon, Dr. Haskoor denied the medical exemption request, and indicated he
spoke to Dr. Field who was unable to provide any evidence to warrant a contraindication. (*Id.*)

On January 31, 2025, Dr. DeRosa notified Plaintiff the medical exemption form submitted
by Dr. Field was denied because he was unable to provide any evidence to warrant a
contraindication to the vaccine; she told Plaintiff Sarah would be excluded on February 5 if she
did not submit proof of immunization or immunity. (Conlon Aff., ¶36.)

Sarah was excluded from the District as of February 5, 2025. (Mitchell Aff., ¶ 26; Conlon

Aff., ¶38.) On February 10, 2025, Plaintiff withdrew Sarah from the District, (Mitchell Aff., ¶ 6; Conlon Aff., ¶38; Ex. Z), and attended Long Beach, (Compl., ¶ 92.) Plaintiff submitted two more medical exemption requests on February 13 and February 19, but Sarah was no longer enrolled in school. (Mitchell Aff., ¶27; Ex. AA.) In response, Dr. DeRosa responded the District was "said to see [Sarah] leave Oceanside" and reminded Plaintiff of her right to utilize the NYS appeal process to consider the exemption. (Mitchell Aff., ¶27; Ex. AA.)

## C. Two Months After Withdrawing Sarah Doe from the School District, Plaintiff Sought to Re-Enroll Her Still Without Proof of Immunization After Being Excluded from Another Public School District For the Same Reason

Plaintiff enrolled in Long Beach after withdrawing from the District, but was ultimately excluded from that school district too after her medical exemption forms were denied by Long Beach's physician. (Compl., ¶96.) Dr. DeRosa, Dr. Mitchell, and Conlon did not speak to anyone from Long Beach Public Schools about Sarah or her immunization status, and neither did any other District administrators or employees. (Mitchell Aff., ¶ 28; Conlon Aff., ¶39.)

In early April 2025, Plaintiff took steps to re-enroll Sarah in the District, and submitted the two medical exemption forms from Dr. Lang and Dr. Garbitelli. (Conlon Aff., ¶40; Mitchell Aff., ¶29.) Conlon sent Epstein both to Dr. Haskoor for review; they were denied. (Ex. DD.) He explained that none of the four physicians who submitted medical exemption forms provided a clear contraindication to receiving the Hepatitis B vaccine. (*Id.*) He wrote, "If the student had severe allergic reaction (e.g., anaphylaxis) after a previous dose of Hepatitis B vaccine, then I will need to speak with the physician that treat[ed] it and provide a medical record of the event." (*Id.*)

## D. The District Sought Guidance from the New York State Department of Health Regarding Plaintiff's Medical Exemption Requests, and the DOH Agreed with the School Physician's Position

On April 9, 2025, Conlon contacted the DOH to request a review by the DOH of the District's denial of all Sarah's medical exemption requests; she attached the necessary

6

documentation and provided additional clarifying information in subsequent emails. (Exs. EE-FF.) On April 22, 2025, the DOH provided the District with the results of its medical exemption review of the documentation submitted by Drs. Field, Richheimer, Lang, and Garbitelli with regards to Sarah's medical exemption requests. The DOH determined that as per the ACIP, autoimmune rashes, dermatophraphia, Von Willebrand's Disease, Immunodeficiency, and possible mycoplasma infection are not contraindications or precautions to Hep B. (Ex. GG.)

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010). The purpose of a prohibitory preliminary injunction is to maintain the status quo, not to determine the ultimate rights of the parties. *See Shenzhen Miracle Laptop Bags Co. v. Castillo*, 2023 WL 1070464, at *3 (E.D.N.Y. Jan. 27, 2023). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act . . . [and] thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006). Where a party "seeks to modify the status quo—and where issuance of the requested injunction will provide the party substantially all the relief it seeks" that party must satisfy the heightened standard. *Id.* at 90. For mandatory preliminary injunctions, a plaintiff must show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm. *See Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). As mandatory injunctions can often be stated in seemingly prohibitory terms, courts impose the heighted standard where "it accomplishes significantly more than preservation of the status quo." *Monserrate v. N.Y. State Senate*, 695 F. Supp. 2d 80, 89 (S.D.N.Y. 2010) (cleaned up), *aff'd*, 599 F.3d 148 (2d Cir. 2010).

Plaintiff incorrectly characterizes her request for preliminary injunction relief as

prohibitory, not mandatory. She is wrong. Plaintiff asks this Court to grant preliminary injunctive relief that would compel the District to admit Sarah to school without having to comply with State-mandated vaccination requirements, despite the fact that she has not been a student in the District since February 10, 2025. "This would not preserve the status quo. On the contrary, it would fundamentally change the positions of the parties as [they] existed prior to the grant of the injunction and therefore is squarely in the nature of mandatory injunctive relief." *Id.* Plaintiff cannot satisfy the heightened standard for mandatory injunctions.

But even if the heightened standard for a mandatory injunction did not apply, Plaintiff must still demonstrate a likelihood of success on the merits. *See V.D.*, 403 F. Supp. 3d at 85. To enjoin the activity of a government agency, Plaintiff must "contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs." *See e.g., Rizzo v. Goode*, 423 U.S. 362, 378-9 (1976). As set forth below, Plaintiff has failed to show her entitlement to injunctive relief under either standard.

## ARGUMENT[2]

### I. PLAINTIFF'S DELAY IN SEEKING AN INJUNCTION DEMONSTRATES THE LACK OF IRREPARABLE HARM

Plaintiff cannot demonstrate irreparable harm given her delay in filing her motion. "An unreasonable delay in seeking a preliminary injunction may preclude a finding of irreparable harm because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." *Garland v. New York City Fire Dep't*, 574 F. Supp. 3d 120, 132 (E.D.N.Y. 2021); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 442 (E.D.N.Y. 2013), *aff'd*, 361 Fed. Appx. 161 (2d Cir. 2009)).

---

[2] Defendants do not respond to the allegations made against Dr. Anthony Donatelli because he is not the District's School Physician, and never has been. As reflected in the opposition papers, Dr. Antwan Haskoor is the School Physician for the District.

8

Courts decline to grant preliminary injunctions in the face of unexplained delays of more than two months. *See e.g., Metropcs New York, LLC v. Riverhead Water Dist.*, 2016 WL 373969, at *2 (E.D.N.Y. Jan. 29, 2016); *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015). Any "presumption of irreparable harm is inoperative if the plaintiff had delayed in either bringing suit or moving for preliminary injunction relief." *Two Kids From Queens, Inc. v. J & S Kidswear, Inc.*, 2009 WL 5214497, at *3 (E.D.N.Y. Dec. 30, 2009) (quoting *Tough Traveler, ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995)). This well-settled principle applies equally to preliminary injunctions premised on alleged constitutional violations. *See Wallikas v. Harder*, 78 F. Supp. 2d 36, 42 (N.D.N.Y. 1999) (collecting cases).

Plaintiff challenges the denial of medical exemption request that she submitted as early as September 25, 2024. (Compl., ¶7.) And by October 31, 2024, she had served a notice of claim. (Compl., ¶15.) Plaintiff's substantial delay in commencing a lawsuit and seeking an injunction after each denial "discredits [plaintiffs'] notion that a preliminary injunction is necessary to prevent an irreparable harm" and thus requires dismissal of [their] PI motion." *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012) (quoting *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994)).

Even if this Court took a narrower approach and used the February 5, 2025 exclusion date to measure Plaintiff's delay, the 10-week delay in filing a lawsuit and an injunction still warrants denial of Plaintiff's motion. *See Metropcs New York*, 2016 WL 373969, at *2. Plaintiff's unexcused delay in seeking preliminary injunctive relief mandates dismissal of her motion.

## II. THE COURT SHOULD DENY THE REQUESTED RELIEF BECAUSE PLAINTIFF FAILS TO MEET THE HIGH STANDARD FOR A PRELIMINARY INJUNCTION

A party seeking a TRO or preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of

hardships favoring the moving party; and (3) that a preliminary injunction is in the public interest. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

Here, where Plaintiff seeks a mandatory preliminary injunction, she must satisfy a higher standard because she seeks to alter the status quo. *Id.* When a preliminary injunction is mandatory or the injunction will provide the movant with substantially all the relief sought, the movant must show a "clear" or "substantial" likelihood of success on the merits, make a "strong showing" of irreparable harm, and show that the preliminary injunction is in the public interest. *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). Plaintiff cannot meet the burden for any preliminary injunction, much less this higher standard for a mandatory one.

**A. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The Merits of Her Federal Claims Under the Americans With Disabilities Act or Rehabilitation Act[3]**

Plaintiff cannot demonstrate a clear or substantial likelihood of success on her federal failure to accommodate claims under the Americans with Disabilities Act ("ADA") or § 504 of the Rehabilitation Act or (Second and Third Causes of Action).

To establish a discrimination claim under § 504 of the Rehabilitation Act or the ADA, Plaintiff must demonstrate: (1) she is a qualified individual with a disability; (2) she was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability. *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016). A discrimination claim can be based on one of three theories "disparate treatment, disparate impact, or failure to make a

---

[3] To the extent Plaintiff alleges the District retaliated against her by failing to accommodate her, such a claim dies on the vine. "Though requesting a reasonable accommodation of a disability is an ADA-protected activity, any activity comprising Plaintiff's failure-to-accommodate claim … cannot also constitute protected activity such as that required to form the basis of a retaliation claim." *Snowden v. Trustees of Columbia Univ.*, No. 12-cv-3095 (GBD), 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir. 2015); *Missick v. City of New York*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010) (a defendant's alleged failure to accommodate a plaintiff's disability subsequent to an ADA or NYHRL protected request "cannot be bootstrapped into a viable disability retaliation claim.").

reasonable accommodation." *Id.*[4] Plaintiffs cannot maintain a claim under any of these theories.

To the extent Plaintiff intended to assert a disability discrimination claim under a disparate treatment theory (which is unclear), it must fail because Plaintiff cannot satisfy the third element. To satisfy the third element of the claim, a plaintiff must demonstrate: (1) a causal connection between a disability and the adverse determination; and (2) that the disability was the *only* cause of the decision. *See Nadel v. Shinseki*, 57 F. Supp. 3d 288, 298 (S.D.N.Y. 2014) (citing *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir.1994)). It is black letter law that plaintiffs must show the defendant school districts' actions were motivated solely by plaintiffs' disabilities. *See* 29 U.S.C. § 794(a); *Sandler v. Benden*, 2016 WL 9944017, at *17 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 715 F. App'x 40 (2d Cir. 2017). And it is also black letter law that a Section 504 claim fails as a matter of law where a decisionmaker shows the decision was motivated at least in part by a factor other than disability. *See Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994); *Sandler*, 2016 WL 9944017, at *18.

Here, Plaintiff cannot show the District acted solely by reason of any disabilities. The sole reason for the denials was the failure to meet the State standards for a medical exemption. Courts have rejected Rehabilitation Act claims where an alleged medical condition was the alleged basis for an inability to receive vaccination. *See Goe*, 43 F.4th at 36 (rejecting claims where plaintiffs were denied medical exemptions because they failed to comply with PHL which was "reasonably related to furthering a legitimate state interest."); *D.A.B. v. N.Y.C. Dept. of Educ.*, 45 F.Supp.3d 400, 407 (S.D.N.Y. 2014) (vaccination requirements intended to limit the spread of diseases do not constitute discrimination); *Wren v. Midwestern State University*, 2019 WL 3099408, * 10 (N.D. Texas 2019) (rejecting Rehabilitation Act claim where the school investigated an exemption request from a vaccine and, thus, an alleged disability was not the only cause for the conduct).

---

[4] Plaintiff does not appear to press a disparate impact claim. Accordingly, this opposition does not analyze that theory of liability.

Plaintiff cites *New York State Ass'n for Retarded Child., Inc. v. Carey*, 466 F. Supp. 479 (E.D.N.Y. 1978), *aff'd*, 612 F.2d 644 (2d Cir. 1979) for support, but it is not instructive here. There, the court found students who were excluded from school for having Hepatitis B were discriminated against because they were excluded based on their disability. That is not the case here. Plaintiff was denied medical exemptions not because of her alleged disabilities, but because she admittedly failed to comply with State-mandated immunization requirements. *See Goe*, 43 F.4th at 36.

Plaintiff is unlikely to succeed on the merits of her failure to accommodate claims too. The District accommodated Plaintiff to the extent the law and regulations allowed, providing Sarah with multiple extensions. (Mitchell Aff., ¶¶ 15, 24.) Ultimately the District has no choice but to exclude her; the alternative was to violate the PHL and face penalties. (*Id.*, ¶ 26.)

Plaintiff's reliance on *A.A.C. on behalf of G.C. v. Starpoint Cent. Sch. Dist.*, 2025 WL 1201971, at *19 (W.D.N.Y. Apr. 25, 2025) to bolster her federal discrimination claims are sorely misplaced. Initially, Plaintiff cites only to the portion of the holding discussing an Article 78 claim, which was the only claim that prompted the Court's issuance of a preliminary injunction. (*Id.* at *18-19.) Notably, the Court denied plaintiffs preliminary injunction as to their claims under the U.S. Constitution, NYS Constitution, and federal statutes, including the ADA and Rehabilitation Act. (*Id.* at * 6.) The Article 78 "arbitrary and capricious" standard does nothing for Plaintiff's ADA and Rehabilitation Act claims.

In any event, the holding in *A.A.C. v. Starpoint* is factually distinguishable. There, the court held plaintiff submitted a facially and procedurally valid exemption request by providing the District with a completed DOH form signed by a state-licensed physician that identified a recognized precaution to the Tdap vaccine pursuant to the CDC's ACIP guidance. (*Id.*) This case is different because none of Plaintiff's medical exemption forms were facially and procedurally

valid. The exemption form submitted by a nurse practitioner was invalid since State law requires a DOH form signed by a state-licensed physician. (Ex. O) The CityMD doctor's note, although signed by a state-licensed physician, did not include the mandatory DOH form. (Pl. Ex. 8.)

And the remaining four medical exemption requests, (Exs. I and AA; Pl. Ex. 4), failed to identify any contraindications or precautions to the Hepatitis B vaccine as indicated in the CDC's ACIP guidelines. Table 4-1 of the ACIP guidelines only identifies one contraindication to the Hepatitis B vaccine: "severe allergic reaction (e.g., anaphylaxis) after a previous dose or to a vaccine component hypersensitivity to yeast." (Ex. A, p. 53.) And Table 4-1 only recognizes one precaution: moderate or severe acute illness with or without fever. (*Id.*) Table 4-2 of the ACIP guidelines identifies autoimmune diseases as a condition that is commonly misperceived as a contraindication or precaution for the Hepatitis vaccine. (Ex. A, p. 60.)

The District has not applied an "unreasonably strict interpretation of vaccine exemption requirements," as Plaintiff incorrectly suggests. The District deferred to its School Physician who determined Plaintiff's exemption requests did not meet the criteria set forth in New York law. (Conlon Aff., ¶¶ 23, 32, 36) If that is not enough, the DOH itself—the very same agency the Legislature authorized to create regulations for State-mandated immunization requirements—reviewed Plaintiff's medical exemption requests and also determined Plaintiff was not entitled to an exemption because her doctors did not identify any contraindications or precautions for the Hepatitis B vaccine. (Exs. EE and FF.) Also, Plaintiff's assertion that students who are not fully vaccinated for Hepatitis B pose no "direct threat," is absurd. The CDC and New York Legislature would not have included the Hepatitis B vaccine in its list of mandatory school immunizations otherwise. In any event, an unvaccinated student can pose a health and safety risk, especially in a school environment where blood injuries are common. (Conlon Aff., ¶ 43.)

13

Finally, the Affirmation of Dr. Clayton Baker, Plaintiff's purported expert, carries no evidentiary weight in the context of reviewing exemptions to the PHL. His four-page affirmation does not even mention the CDC's ACIP guidelines one time, which is the recognized way for physicians to determine whether a student has a permissible contraindication or precaution to a particular vaccine so as to entitle them to an exemption under the PHL.

## B. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The Merits of Her Federal Substantive Due Process Claim

Plaintiff's *Monell* claim against the District (Fifth Cause of Action) is unlikely to succeed on the merits, much less a clear or substantial likelihood of success, because the District did not violate her substantive due process rights, and there can be no *Monell* claim absent an underlying constitutional violation. *See Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014).

*First*, the substantive due process claim is barred by the U.S. Supreme Court's holding in *Jacobson v. Massachusetts* and under Second Circuit precedent, which has repeatedly shot down substantive due process claims challenging mandatory vaccine requirements. *See e.g., Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905); *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015); *Caviezel v. Great Neck Pub. Sch.*, 500 F. App'x 16, 19 (2d Cir. 2012).

The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). "The scope of substantive due process is very limited." *Soundview Associates v. Town of Riverhead*, 725 F.Supp.2d 320, 333 (E.D.N.Y. 2010). Only "the most egregious official conduct" can be construed to violate substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Plaintiff cannot meet that exacting standard.

Here, the District's denial of Plaintiff's exemption requests cannot trigger a substantive due process violation. The District relied on its own district-approved medical professional and

sought the opinion of the DOH, who agreed with the District. (Exs. T, EE-FF.) A disagreement between the findings of medical professionals cannot manufacture a substantive due process claim. The Court should dismiss the first cause of action as a matter of law for this reason alone.

**Second**, Plaintiff fails to assert a fundamental, constitutionally-protected right, and therefore, rational basis review applies, not strict scrutiny.[5] In assessing whether a governmental regulation impinges on substantive due process, courts determine whether the asserted right is fundamental. *See Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003). Strict scrutiny applies to the challenged regulation only when the right is "fundamental," but where it is not fundamental, rational basis applies. *Id.*; *see Doe v. Zucker*, 2021 WL 619465, at *20 (N.D.N.Y. Feb. 17, 2021).

Plaintiff has failed to assert an infringement of a fundamental right. It is black letter law in this Circuit that "there is no fundamental right to an education." *See Goe*, 43 F.4th at 31 (collecting cases). Nor is there a fundamental right for a parent to refuse to have their child immunized, where immunization is a precondition to attending school. *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 355 (4th Cir. 2011) (collecting cases); *see Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944). Rather, "rational basis review is appropriate" here "when a parental right is involved against state regulation." *Doe*, 520 F. Supp. 3d at 250 (quoting *Immediato*, 73 F.3d at 461).

With no fundamental constitutional right at stake, rational basis review (not strict scrutiny) applies. *See Alleyne v. New York State Educ. Dep't*, 691 F. Supp. 2d 322, 336 (N.D.N.Y. 2010). The District's determinations regarding Plaintiff's medical exemption requests should survive rational basis review. The Legislature enacted PHL to prevent the spread of disease and protect the public health. *See* PHL §§ 206(l), 2164(10). It is well-settled that public health is a "legitimate

---

[5] Because there is no fundamental right at stake in this case, the "unconstitutional conditions" doctrine does not apply to the due process claim. The doctrine is only triggered when the government attempts to burden a constitutionally protected right. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606, 133 S. Ct. 2586, 2595 (2013); *See Doe*, 520 F. Supp. 3d at 268.

state interest." *See* e.g., *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 45, n. 8 (2d Cir. 2010); *United States v. Kelly*, 2020 WL 2746001, at *7 (E.D.N.Y. May 22, 2020).

The District's conduct should survive rational basis review because its actions were reasonably related to the legitimate state interests. The District complied with the State-mandated guidelines, because law requires it to. And the District does so with the same purpose behind the DOH guidelines: to prevent or minimize the spread of disease and protect the public health. Because Plaintiff cannot show the District's actions were "wholly irrelevant to the achievement of the State's objective," her substantive due process claim does not survive rational basis review and therefore should be dismissed as a matter of law. *Heller v. Doe*, 509 U.S. 509 U.S. 312, 319 (1993).

Plaintiff claims "Defendants' interference with Plaintiffs' fundamental rights is not narrowly tailored to serve a compelling government interest," (Compl., ¶ 174), but this contention is irrelevant. The "narrowly tailored" requirement applies to strict scrutiny and does not apply to rational basis review. *See Ameur v. Gates*, 759 F.3d 317, 329 (4th Cir. 2014).

**C. Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The Merits of Her State Law Claims**

Plaintiff cannot demonstrate a clear or substantial likelihood of success on her state law claims under the New York State Human Rights Law (First Cause of Action) and Article XI § 1 of the New York State Constitution (Fourth Cause of Action).

**First**, both claims are barred by Plaintiff's failure to exhaust administrative remedies, which is a prerequisite to state law claims. *See e.g.*, *Watkins-El v. Dep't of Educ.*, 2016 WL 5867048, at *3, (E.D.N.Y. Oct. 7, 2016); *Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16 (2d Cir. 2012).

Before bringing this action, Plaintiff should have availed herself of N.Y. Educ. Law § 310, which provides that an aggrieved party may appeal to the Commissioner of Education any act by

16

any officer, school authority, or meeting concerning education law. N.Y. Educ. Law § 310(7). A

school district's exclusion of a student for failure to comply with State immunization requirements

falls within actions that the Commissioner reviews. New York law provides:

> A parent, a guardian or any other person in parental relationship to
> a child denied school entrance or attendance may appeal by petition
> to the commissioner of education in accordance with the provisions
> of section three hundred ten of the education law.

New York PHL § 2164 (7)(b). The Commissioner has examined appeals challenging a student's

exclusion from school for failure to comply with the immunization requirements, as well as

exclusions resulting from the denial of medical exemption requests.[6]

**Second**, Plaintiff's NYSHRL failure to accommodate claim is subject to the same analysis

as its federal counterparts, *Aiola v. Malverne Union Free Sch. Dist.*, 2017 WL 3917018, at *8

(E.D.N.Y. Sept. 5, 2017), and therefore fails, (*See supra* Point II.A.)

**Third**, there is no likelihood of success on the merits of Plaintiff's claim under the NYS

Constitution because Article XI, Section 1 does not create a private right of action. *See A.A.C. et*

*al. v. Starpoint Central School District et al.*, 2025 WL 1201971, at *20 (W.D.N.Y. Apr. 25, 2025);

*Schafer v. Hicksville Union Free Sch. Dist.*, 2011 WL 1322903, at *19 (E.D.N.Y. Mar. 31, 2011).

**D.  Plaintiff Cannot Show a Clear or Substantial Likelihood of Success on The Merits of Her Official Capacity Claims Against Dr. Phyllis Harrington**

Plaintiff's official capacity claims against Dr. Harrington have no clear or substantial

likelihood of success on the merits. In addition to the reasons discussed above, the official capacity

claims fail because they are duplicative of the claims against the District. *See e.g., Z.F.X. by*

---

[6] *See, e.g., Appeal of E.Y.*, 60 Educ. Dep't Rep., Decision No. 17,891 (July 30, 2020) (Ex. HH.) (appeal challenging student's exclusion from school after medical exemption was denied); *Appeal of S.G.*, 60 Educ. Dep't Rep., Decision No. 17,830 (April 13, 2020) (Ex. II.) (same); *Appeal of J.K.*, 60 Ed Dept Rep, Decision No. 17,967 (March 17, 2021) (Ex. JJ.) (appeal challenging student's exclusion from school where student had not complied with immunization requirements, was not considered "in process" of compliance, and did not have a valid medical exemption).

*Vankesteren v. Riverhead Cent. Sch. Dist.*, 2021 WL 1238842, at *5 (E.D.N.Y. Apr. 2, 2021); *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013). And there is no individual liability under either statute even if the claims are asserted against someone in their official capacity. *See Perros v. County of Nassau*, 238 F.Supp.3d 395, 402, n. 3 (E.D.N.Y. 2017).

### E.  Plaintiff Cannot Show She Will Suffer Any Irreparable Harm, Much Less "Extreme or Very Serious Damage" Required for a Mandatory Injunction

To satisfy the requirement, a plaintiff must show that, absent a preliminary injunction, she will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of a trial. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). A court should not issue a preliminary injunction "upon a plaintiff's imaginative, worst-case scenario" consequences of defendant's alleged wrong, but on a concrete showing of imminent, irreparable injury. *DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co.*, 2020 WL 2797244, at *5 (E.D.N.Y. May 29, 2020) (collecting cases).

Any allegation of irreparable harm is belied by Plaintiff's delay in seeking preliminary injunctive relief. (*See supra* Point I.) This fact alone bars a preliminary injunction. (*Id.*) Yet even if this preliminary injunction motion was not doomed by Plaintiff's delays the mere assertion that Plaintiff's statutory rights have been violated does not create a presumption of irreparable harm. *Weisshaus v. Cuomo*, 512 F. Supp. 3d 379, 389 (E.D.N.Y. 2021), *appeal dismissed sub nom. Weisshaus v. Hochul*, WL 17256755 (2d Cir. 2022). "Otherwise, the courts would presume irreparable harm in deciding every preliminary injunction motion made in cases brought under federal statutes. That is certainly not the law." *Weisshaus*, 512 F. Supp. 3d at 389.

Rather, a finding of irreparable harm is warranted where the constitutional deprivation is convincingly shown, and that violation carries non compensable damages. *See Donohue v.*

18

*Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Accordingly, courts cannot determine whether plaintiffs demonstrate a constitutional deprivation without assessing the likelihood of success on the merits. *Id.* Thus, "the two prongs of the preliminary injunction threshold merge into one" and "the favorable presumption of irreparable harm arises only after a plaintiff has shown a likelihood of success on the merits of the constitutional claim." *Weisshaus v*, 512 F. Supp. 3d at 390. As argued above, Plaintiff has not shown a likelihood of success on the merits as to her substantive due process claim and cannot show irreparable harm. (*See supra* Point II.B.)

Moreover, the District did not set vaccination law. It merely complied with the PHL enforced by DOH. Taken together, PHL § 2164 and regulations, left the District no choice but to exclude Plaintiff.[7] Any harm connected to the vaccine-related exclusions "are the result of plaintiffs' own decision not to vaccinate their children*." V.D.*, 403 F. Supp. 3d at 90 n.7 (emphasis in original).[8] Between the delay in moving for a temporary restraining order and preliminary injunction, and the fact that any alleged harm is self-inflicted, Plaintiff has not demonstrated the type of irreparable harm that would warrant issuance of a mandatory preliminary injunction.

## F. The Balance of Hardships Does Not Tip Decisively in Plaintiff's Favor

Plaintiff cannot demonstrate that the balance of hardships tips decisively in her favor. Courts consider "ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Madej v. Yale Univ.*, 2020 WL 1614230, at \*19 (D. Conn. Mar. 31, 2020) (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)). "A balance of equities tipping in favor of the party requesting a preliminary injunction means a balance of the hardships against the

---

[7] In fact, the District could face fines and other penalties if it did not exclude Sarah.

[8] *cf. Doe v. Rensselaer Polytechnic Inst.*, 2019 WL 13472598, at \*10 (N.D.N.Y. Aug. 21, 2019) (balance of hardships did not favor plaintiff where even if the court enjoined defendant from enforcing its disciplinary suspension of plaintiff, plaintiff could not return to school because he had not started the process to change his medical leave status).

19

benefits." *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 209 (N.D.N.Y. 2020).

As argued above, any alleged harm to Plaintiff resulting from Sarah's exclusion is self-inflicted, which sways the balance of equities in Defendants favor. (*See supra* Point II.E.) In contrast, if the Court grants Plaintiff's motion this early in litigation, it risks exposing the District's students, staff, and community members to a contagious disease. The PHL exists to protect the public from disease and the requirements further that purpose. *Cf. Doe*, 520 F. Supp. 3d at 258.

An injunction that would overturn Sarah's exclusion is premature and potentially harmful to the public. Thus, the equities and public interest favor denying Plaintiff's preliminary injunction motion. Nurse Conlon often deals with blood injuries, ranging from minor accidents to more significant injuries such with student athletes. (Colon Aff., ¶ 45.) Sarah plays sports and was going to join sports teams, posing a risk to her fellow classmates. (Compl. ¶ 23.) Plaintiffs' inability to succeed on the merits provides yet another reason to deny their motion. (*See supra* II.A.)

Given Plaintiff's inability to satisfy the other requisite elements of a mandatory preliminary injunction, coupled with the strong public health interest in preventing the spread of disease by unvaccinated students, the balance of hardships and the public interest does not favor Plaintiff.

## CONCLUSION

This Court should deny Plaintiff's motion for a temporary restraining order and preliminary injunction in its entirety, together with such other and further relief as this Court may deem just, equitable, and proper.

Dated: Carle Place, New York
      May 12, 2025

                                     **SOKOLOFF STERN LLP**
                                     *Attorneys for Defendants*
                                     *Oceanside Union Free School District*
                                     *and Dr. Phyllis S. Harrington*

By:    CHELSEA WEISBORD
        DANIELLE JACOBS
        179 Westbury Avenue
        Carle Place, New York 11514
        (516) 334-4500
        File No. 250122LI

To:    All Counsel of Record (via ECF)

21