# GIBSON LAW FIRM, PLLC

SUJATA S. GIBSON, ESQ.
120 E Buffalo St., Suite 2
Ithaca, New York 14850

October 8, 2025

**VIA ECF**
Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> Re:    *Doe v. Oceanside Union Free School District, et al.*, Docket No. 2:25-CV-02304
> (GRB)(ST) – Plaintiffs' Opposition to Defendants' Pre-Motion Letter for Sanctions

Dear Judge Brown:

We write in opposition to the 9/16/25 pre-motion letter filed by Defendants seeking the extraordinary remedies of sanctions and a referral to the Committee on Grievances. Defendants' request is without merit, as the communications at issue do not violate Rule 4.2 of the New York Rules of Professional Conduct. The first communication was a legally authorized Notice of Claim sent on behalf of a new client in a separate matter. The second was a good-faith communication about a new issue, sent with full transparency to opposing counsel, that caused no prejudice.

Defendants' motion mischaracterizes the facts, misapplies the law, and relies on inapposite case law to manufacture an ethical crisis where none exists. Furthermore, their decision to file this serious application without first attempting to confer with Plaintiffs' counsel is a violation of this Court's rules and reveals the motion's true purpose as a tactical maneuver designed to chill zealous advocacy. We respectfully request that the application be denied in its entirety.

## I.      The September 1 Communication Was Proper and Did Not Violate Rule 4.2

Defendants' central claim—that our September 1, 2025 communication was an improper contact with a represented party—is legally and factually incorrect. The communication does not meet the necessary elements for a violation of Rule 4.2 of the New York Rules of Professional Conduct because it was (A) made on behalf of a different client concerning a new and separate matter for which representation is unknown, and (B) expressly "authorized by law."

### A.      The Communication Concerned a New Matter for a New Client

Rule 4.2(a) only prohibits communications "about the subject of the representation with a party the lawyer knows to be represented by another lawyer **in the matter**." (emphasis added). The communication here was not made in the context of the *Doe* matter.

First, the communication was made on behalf of a different client. The letter was sent on official Children's Health Defense (CHD) letterhead and was signed by the client (CHD) and us in our capacity as counsel supporting that organization, not as counsel for the Doe family.

Second, it concerned a new and separate matter. The *Doe* litigation involves an individual student's right to a specific medical exemption. The CHD letter, by contrast, addresses a statewide issue: the dissemination of allegedly misleading legal guidance to all school districts by the Ingerman Smith law firm, who does not represent Oceanside. Our responsive letter to all the Districts in the state warns of broad legal risks and serves as a formal Notice of Claim for a potential, future class action lawsuit on behalf of other, similarly situated students across the state. Comment [4] to Rule 4.2 explicitly permits communication with a represented party "concerning matters outside the representation." A potential statewide class action is plainly a matter outside the narrow representation of the District by Sokoloff Stern LLP in the pending individual lawsuit by Sarah Doe, particularly because Sarah Doe is not impacted by Ingerman Smith's guidance given this Court's grant of a preliminary injunction allowing her to attend school.

Third, because this was a new matter, we had no knowledge that the District was represented by counsel for this specific purpose and still do not have clarity on that question. The prohibition in Rule 4.2 applies only where the lawyer "knows that the party is in fact represented in the matter to be discussed." Comment [8] to Rule 4.2. While we know Sokoloff Stern represents the District in the *Doe* litigation, they are an insurance-appointed firm whose retention is approved on a per-matter basis. We cannot be expected to assume representation where none has been established.

This is not a theoretical point; it is proven by the District's own conduct in a separate, contemporaneous legal matter. Yesterday, we filed a Verified Petition with the New York State Commissioner of Education in the *Matter of A.G., et al. v. Oceanside Union Free School District*. (*See* **Exhibit A**, Verified Petition with Exhibits). This new legal action challenges the District's separate and unlawful denial of a medical exemption for another student at Oceanside. The respondents in that action include the same key individuals: the District and Oceanside Superintendent Harrington. This filing followed a series of adversarial communications, including a formal demand letter sent directly to Superintendent Harrington on September 24, 2025. (*See* Plaintiffs' Exhibit A, supra). Despite this clear, separate legal dispute unfolding over the past several weeks, Sokoloff Stern has not appeared or been engaged to represent the District in the new matter. This provides irrefutable, real-world evidence that the District's legal representation is matter-specific. We therefore had no basis to know who, if anyone, would represent the District in the new matter of the potential CHD class action, making our direct service of the Notice of Claim on September 1 entirely proper.

### B.    *The Communication Was Expressly Authorized by Law*

Even if the communication were deemed to be in the same matter, it would still be proper under a clear exception to the rule. Rule 4.2(a) does not apply to communications that are "**authorized to do so by law**." (emphasis added).

The September 1 letter was, by its own terms, a formal Notice of Claim. Under New York law, serving a notice of claim directly upon a municipal entity like a school district rather than their attorneys is a statutory prerequisite to litigation. This is not merely a strategic choice; it is a legally mandated action required to preserve a client's rights. Comment [5] to Rule 4.2 speaks directly to this situation, stating that "[c]ommunications authorized by law may include communications by a lawyer on behalf of a client who is exercising a constitutional or other legal right to communicate with the government." Serving this notice was the exercise of just such a legal right on behalf of our client, CHD.

Therefore, the September 1 communication was a legally necessary and authorized action on behalf of a new client in a separate matter and does not constitute a violation of the Rules of Professional Conduct.

## II.     The September 15 Communication Does Not Warrant Sanctions

While we acknowledge the September 15, 2025 communication was sent directly to Defendants' employees, it was a good-faith act of advocacy undertaken to prevent immediate and significant harm to our client arising out of a new claim. It caused no prejudice, demonstrated no bad faith, and does not rise to the high level of misconduct required for the imposition of sanctions.

### A.     The Communication Was a Transparent, Good-Faith Effort to Prevent Harm

According to Comment [1] of Rule 4.2, the purpose of the Rule is to protect a represented party from "possible overreaching by other lawyers . . . interference by those lawyers with the client-lawyer relationship, and un-counseled disclosure of information." The communication did none of these things. It was sent to address an urgent, time-sensitive administrative issue—the threatened demotion of our student client due to a dispute over the transfer of academic records—that risked causing her severe emotional distress and academic regression. This new situation was urgent and confusing. On Friday afternoon (September 12, 2025), Oceanside informed Jane that they would humiliate Sarah Monday morning by yanking her out of her eleventh grade classes, which she had been attending for several weeks, and making her repeat the tenth grade due to issues getting records from Long Beach. Jane explained that Sarah was so distraught that she did not believe she would recover from this further retaliation after all she'd been through to be able to just return to school a few weeks before. This is a new issue and is not part of the claims before this Court. It also involves two different districts. The legal team worked on a letter alerting both districts that this threatened action would constitute a fresh violation of Sarah's rights and fragile emotional and mental health and requesting reasonable accommodation.

Crucially, the communication was transparent. Attorney Davenport copied defense counsel on the email, ensuring they were immediately aware of the issue and could advise their clients accordingly. This act of professional transparency is the very antithesis of the surreptitious, overreaching conduct the rule is designed to prevent. Far from interfering with the attorney-client relationship, he ensured counsel was part of the conversation. This communication was not born from a desire to gain a tactical advantage, but from our duty to act with "reasonable diligence and promptness in representing a client" under Rule 1.3(a) when faced with a situation that could

"prejudice or damage the client" under Rule 1.1(c)(2).  To the extent that it was a mistake to copy the superintendent on the September 15, 2025, email, it was made in good faith to resolve what appeared to be a new matter.

### B.   The Communication Caused No Prejudice and Fails to Meet the High Standard for Sanctions

An ethical violation does not automatically warrant sanctions, particularly where the conduct was not willful and caused no harm. Defendants can point to no prejudice whatsoever resulting from the September 15 email. Their counsel was immediately aware of the communication and could advise their client accordingly. The primary purpose of Rule 4.2 is to protect a represented person from "possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship, and un-counseled disclosure of information relating to the representation." *See* Comment [1] to Rule 4.2. Our transparency in copying opposing counsel completely negated these risks and prevented any prejudice.

While a violation may be found even if no harm was caused, the absence of harm is a critical factor in determining the appropriate remedy, if any. Courts in this district reserve sanctions for the most extreme situations and require a showing of bad faith for such a severe remedy. For example, in *In re Brizinova*, the court **declined to sanction** an attorney for using far more inflammatory language than anything at issue here, including calling a trustee's lawsuit an "extortionist journey." *See* 565 B.R. 488, 505 (E.D.N.Y. 2017). The court wisely noted that what one lawyer sees as "forceful rhetoric," another may perceive as "sharply and sanctionably obnoxious," and concluded that such conduct did not meet the high bar for sanctions. *Id*. at 507. If such language is not sanctionable, a transparently copied email sent to resolve an urgent administrative dispute certainly is not.

The request for sanctions and a referral to the Committee on Grievances is a grossly disproportionate remedy for a harmless procedural misstep and should be rejected.

## III.   Defendants Motion is Procedurally Defective and Relies on Inapposite Authority

Defendants' rush to seek sanctions without professional courtesy underscores the tactical nature of their motion and violates the spirit, if not the letter, of this Court's rules.

### A.   Defendants' Failure to Confer Violates Court Rules and Shows a Lack of Good Faith

A motion attacking the professional conduct of opposing counsel should be a last resort. Yet, Defendants made no attempt to resolve this issue before seeking judicial intervention. This conduct runs contrary to the entire procedural framework of this District, which strongly encourages cooperation and pre-motion consultation to resolve disputes efficiently.

Your Honor's Individual Rules—along with the Local Rules—are designed to ensure that parties make good-faith efforts to resolve non-dispositive issues before involving the court. For

example, your rules explicitly state "[p]rior to making <u>any</u> non-dispositive motion, counsel are required to meet and confer consistent with Local Civil Rule 37.3(a) in a good faith effort to resolve and/or reduce any matters to be raised in such motion." Individual Rule II(f)(1) (emphasis in original). While this motion is now before Your Honor, the underlying principle remains: parties are expected to communicate before filing motions.

By waiting two weeks after the first letter and then filing a motion seeking serious sanctions without a single phone call, Defendants chose ambush over professionalism. This failure to engage in the expected professional courtesy demonstrates that their application is not a good-faith effort to remedy a perceived ethical lapse but rather a tactical maneuver intended to chill zealous advocacy. We respectfully request that the Court deny the application.

### B.    *Defendants' Other Cited Cases Are Unpersuasive*

Defendants' reliance on *Shuler v. Liberty Consulting Servs., Ltd.*, Civ. No. 20-cv-5779, 2022 WL 1552039 (E.D.N.Y. Apr. 4, 2022) is entirely misplaced because the sanctions in that case were predicated on a clear finding of bad faith—a factor that is completely absent here. The conduct in *Shuler* was not merely a procedural misstep; it was a deliberate, deceptive, and coercive effort to circumvent the law and undermine the integrity of the judicial process.

In *Shuler*, the court found that the defense attorney acted in bad faith for several specific reasons. The attorney personally drafted a settlement agreement and provided it to his client with the knowledge and intent that his client would use it to negotiate directly with the represented plaintiff. *Id*. at *2, 11. This was not a simple communication; it was the engineering of a binding legal instrument designed to end the litigation without the involvement of plaintiff's counsel. *Id*. at *11. The court found this conduct was for the "improper purpose" of avoiding mandatory court approval of an FLSA settlement under *Cheeks v. Freeport Pancake House, Inc.*, a requirement of which the attorney was "well aware." *Id*. at *11-13. Further aggravating the bad faith was the coercive context, where the plaintiff was still employed by the defendant and agreed to the settlement because he did not want to "jeopardize [his] employment." *Id*. at *12-13.

Our conduct bears no resemblance to these facts. The September 15 communication was not a secret settlement negotiation designed to terminate the litigation. It was a transparent letter, openly copied to opposing counsel, addressing a new ancillary administrative issue. Our purpose was not the "improper purpose" of circumventing a court rule, but the proper purpose of fulfilling our duty of diligence under Rule 1.3 to protect our client from the immediate harm of being demoted and humiliated. There was no coercion, no secret deal, and no attempt to mislead the Court or opposing counsel. Because our conduct lacks the critical element of bad faith that drove the court's decision in *Shuler*, that case provides no support for the imposition of sanctions here.

### IV.    <u>Conclusion</u>

For the foregoing reasons, Defendants' application for sanctions is procedurally improper and substantively meritless. We respectfully request that the Court deny the pre-motion letter in its entirety.

Respectfully submitted,

/s/ Sujata Gibson                    /s/Chad A. Davenport

Sujata S. Gibson, Esq.               Chad A. Davenport, Esq.