**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

JANE DOE, individually and on behalf of her minor child, SARAH DOE,

Plaintiffs,

- against -

OCEANSIDE UNION FREE SCHOOL DISTRICT, JILL DE ROSA, in her individual capacity, BRENDON MITCHELL, in his individual capacity, ANTWAN HASKOOR, M.D., in his individual capacity, and MARY CONLAN, in her individual capacity,

Defendants.

---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

Civil Action
No. 25-2304 (GRB)(ST)

FILED
CLERK
11/3/2026 3:51 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge**:

This matter, which has been pending for well over a year, has been the subject of several written and oral opinions, familiarity with which is assumed. *See Doe v. Oceanside Union Free Sch. Dist.*, No. 25-2304 (GRB) (ST), 2026 WL 3001505 (E.D.N.Y. Oct. 6, 2026) (*Doe III*) (denying successive emergency motion for preliminary relief); *Doe v. Oceanside Union Free Sch. Dist.,* No. 25-2304 (GRB) (ST), 2026 WL 2883406 (E.D.N.Y. Sep. 23, 2026) (*Doe II*) (denying preliminary injunction following factual hearing), *appeal docketed*, No. 26-2679 (2d Cir. Sep. 24, 2026)[1]; Docket Entry ("DE") 85-8 (August 12, 2025 transcript of oral decision granting temporary emergency relief); *Doe v. Oceanside Union Free Sch. Dist.*, No. 25-2304 (GRB) (ST), 2025 WL 5294062, at *1 (E.D.N.Y. May 19, 2025) (denying preliminary relief based upon delay).

[1] Plaintiffs have appealed both *Doe II* and *Doe III* to the Second Circuit, and both appeals are currently pending as a consolidated proceeding. On October 20, 2026, the Circuit issued an order providing that "to the extent [plaintiffs] request[ ] interim relief pending review by a three-Judge panel, the motion is DENIED." Docket for 2d Cir. No. 26-2679 at DE 35.1.

Presently before the Court is a motion by defendants seeking the imposition of sanctions on plaintiffs' counsel emanating from two incidents: (1) the state-wide distribution of a letter by plaintiffs' counsel on September 1, 2025 to every board of education and school superintendent in the state, including the defendant school board and (2) a September 15, 2025 letter from plaintiffs' counsel to defendants Harrington and Mitchell, respectively the superintendent and principal of the defendant school district and school, specifically touching on matters related to plaintiff Sarah Doe's return to school following this Court's order. *See generally* DE 75. These communications are further described below.

*The September 1 Letter*

The September 1 letter, which employs the letterhead of Children's Health Defense, is explicitly addressed to all "New York State School Boards of Education" and "New York State Superintendents of Schools," and apparently forwarded to "District Clerks for Distribution." DE 75-2 at 2. It begins, somewhat ominously, stating:

> This memorandum is necessary because the recent decision in *Doe v. Oceanside Union Free School District* is being misrepresented in legal guidance circulated statewide. A memorandum issued by Ingerman Smith, LLP[2] on August 20, 2025, inaccurately describes the case as "unique" and claims it does not alter districts' immunization obligations. This advice is false and dangerously misleading, and any district relying on it risks serious legal and financial exposure.
>
> The *Oceanside* decision is not based on unusual facts but on the plain language of New York's Public Health Law and the Americans with Disabilities Act (ADA)—statutes that apply to every school district in the state. Any district that denies a valid medical exemption in reliance on flawed legal advice will be acting unlawfully and should expect to face litigation, with substantial legal and financial consequences.

---

[2] The parties dispute—in argument and without factual support—whether the Ingerman Smith memorandum represented attorney-client advice or constituted a marketing piece. It is undisputed, however, that Ingerman Smith did not represent the defendants herein.

*Id.* The rhetoric grows only more polemical from there. The letter contains only the typed "signature" of Children's Health Defense, and it bears a signature block indicating the letter is "Supported by" Sujata Gibson, Esq. and Chad Davenport Esq., again with typed signatures. The letter accurately reflects that both attorneys were, at that time, "Counsel for Plaintiff in Doe v. Oceanside UFSD," though only Ms. Gibson remains on the case. In a declaration submitted to this Court, Ms. Gibson minimizes her role in this communication, averring that she "did not send or direct the transmission of that email to any representative of the Oceanside Union Free School District." DE 75-5 ¶ 15. At the same time, she undercuts this statement by adding:

> Due to the volume of such communications, it is my practice to route bulk email distributions of this nature into a designated inbox. I did not review each individual recipient of that distribution and was not aware at the time that the Oceanside Union Free School District was among them.

*Id.* ¶ 16.

*The September 15 Letter*

On September 15, Ms. Gibson sent a letter on her letterhead addressed to Harrington, Mitchell and several other Oceanside S.D. employees. DE 75-3. It was simultaneously transmitted by Davenport to the addressees and counsel for defendants. According to the cover email, it was sent in anticipation of a meeting that counsel expected to have with school officials that day. *Id.* at 2. The letter refers to allegations in the case, such as Sarah Doe's alleged "wrongful exclusion and/or threatened exclusion from school" the previous year, and the letter goes on to mischaracterize the exclusion as "an action that a judge has already ruled against the district for." *Id.* at 4. However, the letter largely deals with workaday issues concerning the plaintiff's return to school and potential loss of credits due to an inter-school transfer. *Id.* It contains conformed signatures of Ms. Gibson and Mr. Davenport. *Id.* at 5.

Defendant contends that these communications violate the Rules against communicating with represented parties and seek sanctions. This opinion follows.

**DISCUSSION**

Defendants predicate their motion on Rule 4.2(a)[3] of the New York Rules of Professional Conduct. Rule 4.2(a) states that:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

New York Rules of Pro. Conduct r. 4.2. Importantly, the comments to that section provide that:

> This Rule does not prohibit communication with a represented party or person or an employee or agent of such a party or person concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party or person or between two organizations does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. . . . A lawyer having independent justification or legal authorization for communicating with a represented party or person is permitted to do so.

*Id.* cmt. 4. In interpreting this rule, the New York Court of Appeals has noted:

> We begin our analysis by noting that what is at issue is a disciplinary rule, not a statute. In interpreting statutes, which are the enactments of a coequal branch of government and an expression of the public policy of this State, we are of course bound to implement the will of the Legislature; statutes are to be applied as they are written or interpreted to effectuate the legislative intention. The disciplinary rules have a different provenance and purpose. Approved by the New York State Bar Association and then enacted by the Appellate Divisions, the Code of Professional Responsibility is essentially the legal profession's document of self-governance, embodying principles of ethical conduct for attorneys as well as rules

[3] Defendants also rely upon the aiding and abetting-type language of Rule 8.4(a).

> for professional discipline. While unquestionably important, and respected by the courts, the code does not have the force of law.

*Niesig v. Team I*, 76 N.Y.2d 363, 369 (1990) (internal citation omitted); *see also Doe v. Holy Bagel Cafe II, Inc.*, No. 15-CV-03620 (MKB) (JMW), 2024 WL 4708707, at *2 (E.D.N.Y. Oct. 17, 2024) (applying New York Rules of Professional Conduct to federal practice). The *Niesig* decision went on to note that "[t]he general thrust of the rule is to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact." 76 N.Y.2d at 370 (quotation omitted).

Taken together, these guidelines obviate defendants' motion to the extent it rests upon the September 15, 2025 letter. While that letter contains some unfortunate grandstanding by counsel, the facts and circumstances surrounding its issuance, as well as the bulk of the content, reveal that the letter falls outside the proscriptions of Rule 4.2. It was issued in connection with a meeting planned for later that day, at which defense counsel was presumably going to be in attendance. It dealt with nut-and-bolts educational issues that were incidental to, but largely outside of, the ambit of this Court's order. It was simultaneously transmitted to the defendants and their attorneys; counsel was effectively "present" for the communication, which, as the Court of Appeals has held, "neutralizes the contact." 76 N.Y.2d at 370. Thus, the complaints emanating from the September 15 letter fail to support the motion.

The September 1 letter proves substantively different, though ultimately unavailing. The communication unquestionably speaks directly (and, as discussed *infra*, incorrectly and irresponsibly) to the content of the litigation. That the letter ultimately contains a threat of legal action based on an erroneous legal construction of this Court's decision, puts it squarely within the parameters of the Rule.

The key mitigating element, though, is the procedure through which the letter was transmitted to defendants. Here, the only evidence of record is that the letter, transmitted to school districts statewide, was inadvertently or, perhaps better said, negligently communicated to the Oceanside defendants. DE 75-5 at 3. Moreover, while plaintiffs' counsel appears to have been advancing an agenda as to school districts across the state, there is no evidence to suggest that they were trying to gain any advantage in this litigation by sending it to the Oceanside defendants. While counsel's actions are far from exemplary professional conduct, they do not implicate the Rule.

Defendants seek the imposition of fees and/or reference to this Court's grievance committee. Neither are appropriate here.

That determination does not fully resolve the matter, however, for this motion does not come to the Court on a blank slate. As to plaintiffs' counsel's characterization of this Court's August 12, 2025 in the September 1 letter, and the dissemination of their position, the undersigned previously observed:

> The Court has been advised that plaintiffs' counsel Sujata S. Gibson and former counsel Chad A. Davenport, Esq. caused the distribution of a letter to every school board and district in New York State characterizing this Court's preliminary injunction decision. DE 75-2 (letter available at *https://childrenshealthdefense.org/wp-content/uploads/CHD-Letter-to-NYS-Boards-of-Education.pdf*). In that letter, which threatens districts with legal action based on the preliminary injunction determination, [counsel] states that this Court's decision was "not based on unusual facts," holds that "school districts cannot second-guess a child's certifying physician under Public Health Law," and the decision "dramatically raises your district's exposure." *Id.* This represents a gross mischaracterization of the express terms of this Court's determination. Indeed, in granting preliminary relief, the Court cautioned counsel to be "very clear on the scope of the decision," which was limited to "a very narrow question: Is Sarah going back to school in September?" DE 85-8 at 53. The decision was expressly "based on a very limited set of facts, and it's very specific to this case. This is not going to change the world in any way, but it will have an effect on the parties." *Id.* Given these constraints, the Court

> finds that Ms. Gibson's and Mr. Davenport's actions were both factually incorrect and professionally inappropriate.

*Doe II*, 2026 WL 2883406, at *1 n.1. And the problems did not end there. Within the last month, in *Doe III*, the Court determined that Ms. Gibson had misconstrued the history of this matter by making a "fatuous assertion," and further "falsely and baselessly" advancing a characterization that is "flatly untrue." *Doe III*, 2026 WL 3001505, at *2.

Thus, while the motion for sanctions is DENIED, Ms. Gibson is hereby cautioned that her actions going forward will be scrutinized. Any further unethical or inappropriate conduct will not be tolerated.

**SO ORDERED.**

Dated: November 3, 2026
Central Islip, New York

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge